1

2

3

4

5

6

7

8                           UNITED STATES DISTRICT COURT

9                          CENTRAL DISTRICT OF CALIFORNIA

10    MARDOQUEO GUEVARA,                    )   CASE NO. CV 11-459-PJW
                                            )
11                    Petitioner,           )
                                            )
12          v.                              )   MEMORANDUM OPINION AND ORDER
                                            )   DENYING PETITION WITH PREJUDICE
13    MAURICE JUNIOUS, WARDEN,              )
                                            )
14                    Respondent.           )
      _____       )
                                            )
15

16                                    I.

17                               INTRODUCTION

18        Petitioner brings this habeas corpus petition pursuant to 28

19   U.S.C. § 2254, alleging that: 1) his sentence is unconstitutional

20   because he received concurrent sentences for multiple convictions

21   arising out of a single act; 2) there was insufficient evidence to

22   support his conviction of attempted extortion in Count 10; and

23   3) his sentence of 17 years to life for attempting to extort $25

24   constitutes cruel and unusual punishment.  For the following reasons,

25   the Court finds that the state courts did not err in rejecting these

26   claims.

27

28

1                                      II.

2                            STATEMENT OF FACTS

3          The following statement of facts, including the footnotes, was

4    taken verbatim from the California Court of Appeal's decision

5    affirming Petitioner's convictions and sentence on direct appeal:

6          This case arises from repeated encounters in or about

7          December 2006 through March 2007 between [Petitioner], an

8          admitted gang member, and the victim Rafael Merida, a street

9          vendor.[1]

10         [Petitioner] was charged by information with committing

11         extortion (count 1), second degree robbery (count 2), and

12         attempted extortion (counts 8, 9, 10) against Merida.[2]

13         [Petitioner] was also charged with carrying a loaded,

14         unregistered firearm (count 6).  Gang enhancements were

15         alleged as to counts 1, 2, 6, 8, 9 and 10, and firearm-use

16         enhancements were alleged as to counts 1 and 2.  The

17         information further specifically alleged as to counts 1, 2

18         and 6 that [Petitioner] had previously served a separate

19         prison term for a felony under Penal Code section 667.5,

20         subdivision (b).

21         According to the three counts at issue, [Petitioner]

22         committed attempted extortion on the following occasions:

23         On or between December 1, 2006 and January 31, 2007 (count

24

25   _____

26   [1]  Co-defendant Walter Giovanni Rivas accompanied [Petitioner] on
     some of those occasions.  He is not a party to this appeal.

27

28   [2]  Co-defendant Rivas [was] also charge[d] in counts 1, 2 and 6.
     The trial court dismissed counts 3, 4 and 5 on the prosecution's
     motion at the preliminary hearing.

8); on or between February 1, 2007 and February 29, 2007
(count 9); and on or about March 26, 2007 (count 10).

The pertinent evidence presented at trial established
Merida operated a taco stand outside a liquor store at a Van
Nuys intersection.  Early in 2007, [Petitioner], accompanied
by several other men, told Merida he was working in a
territory controlled by the Mara Salvatrucha (M.S.) gang,
and he would have to pay $25 in protection money or risk
being killed or having his taco stand burned down by
[Petitioner] and his companions.  Merida was frightened, but
he told [Petitioner] the taco stand did not belong to him.
Merida did not pay the protection money; [Petitioner] and
his companions left.  (Count 8.)

In February 2007, [Petitioner] returned with several
companions again and demanded the protection money, because
another taco vendor was paying it.  [Petitioner] also
reminded Merida he already knew what would befall him if he
refused to make payment.  This time, Merida said the taco
stand belonged to the liquor store.  [Petitioner] and his
companions left, again without collecting $25 from Merida.
(Count 9.)

On Monday, March 26, 2007, [Petitioner] and his
companions came back a third time.  [Petitioner] told Merida
he would have to start paying the protection money by Friday
[March 30, 2007] and "this was the last time they were
letting [Merida] know."

Merida testified [Petitioner] always brought a handgun
with him at every encounter.

3

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Right after his third encounter with [Petitioner], Merida contacted police, who gave Merida a microphone to wear for his anticipated meeting with [Petitioner] on Friday, March 30, 2007.  Officers agreed to conduct audio and video surveillance from a van parked near the intersection of Merida's taco stand.[3]  [Petitioner] arrived with his companions that evening, told Merida he was there for the protection money and asked if the two of them had a deal.  [Petitioner] said no one would bother Merida if he made the $25 payment.  Merida saw a handgun in [Petitioner]'s pocket.  At one point, [Petitioner] produced the gun, yelled to a passing vehicle that it was in M.S. territory and displayed what officers at the scene recognized as an M.S. gang sign.  Merida made the $25 payment.  [Petitioner] left the scene, was followed by officers, and arrested.

A police officer testified as a gang expert that [Petitioner] committed the charged offenses for the benefit of M.S., his criminal street gang.

The jury convicted [Petitioner] as charged and found true the criminal street gain allegations and firearm-use allegations.  In a bifurcated proceeding, the trial court found true the prior prison term allegation.

At sentencing, the prosecutor sought a state prison term of 17 years to life; defense counsel argued the

---

[3]  The audio/video recording was played for the jury.  (RT 152-154.)

4

1   proposed sentence was cruel and unusual punishment for a $25
2   extortion, and urged the court to dismiss the gang
3   enhancements (§ 186.22, subd. (g)) so [Petitioner] would be
4   eligible to receive a determinate term sentence.  The trial
5   court replied that, had it not seen the videotape, it might
6   have been inclined to strike the gang enhancement.  "But
7   after having seen the videotape of [Petitioner] and the way
8   he was acting . . . , the court feels that this was really
9   an egregious violation.  It may have only been $25 on this
10  occasion, but it was an ongoing offense.  [¶]  [Petitioner]
11  was very persistent in collecting this and was clearly
12  trying to intimidate everyone . . . with his gang
13  affiliations."  The court denied the defense motion to
14  strike the gang enhancements in the interests of justice.

15      The trial court imposed an aggregate state prison
16  sentence of 17 years to life, consisting of a life term with
17  a minimum eligible parole date of seven years for the
18  extortion charged in count 1, plus 10 years for the firearm
19  enhancement under section 12022.53, subdivisions (b) and
20  (e).  The court also imposed concurrent terms of 54 months
21  (the middle term of 18 months for attempted extortion, plus
22  a consecutive three-year criminal-street-gang enhancement)
23  on each of counts 8, 9 and 10.[4]  Pursuant to section 654,
24  the court imposed and stayed sentence on count 2 for second
25  degree robbery, and on count 6 for carrying a loaded an[d]
26
27
    _____

28  [4]  As discussed below, the middle term for attempted extortion
    is 24 months, rather than 18 months.  (§ 524.)

1    unregistered firearm.  The court dismissed the one-year

2    prior prison term enhancement in furtherance of justice.

3  (Lodgment No. 5 at 2-4).

4                              III.

5                      STANDARD OF REVIEW

6      The standard of review in this case is set forth in 28 U.S.C.

7  § 2254:

8        An application for a writ of habeas corpus on behalf of

9        a person in custody pursuant to the judgment of a State

10       court shall not be granted with respect to any claim

11       that was adjudicated on the merits in State court

12       proceedings unless the adjudication of the claim--

13            (1)  resulted in a decision that was contrary to, or

14       involved an unreasonable application of, clearly established

15       Federal law, as determined by the Supreme Court of the

16       United States; or

17            (2)  resulted in a decision that was based on an

18       unreasonable determination of the facts in light of the

19       evidence presented in the State court proceeding.

20  28 U.S.C. § 2254(d).

21      A state court decision is "contrary to" clearly established

22  federal law if it applies a rule that contradicts Supreme Court case

23  law or if it reaches a conclusion different from the Supreme Court's

24  in a case that involves facts that are materially indistinguishable.

25  *Premo v. Moore*, 131 S. Ct. 733, 743 (2011) (citing *Bell v. Cone*, 535

26  U.S. 685, 694 (2002)).  To establish that the state court unreasonably

27  applied federal law, a petitioner must show that the state court's

28  application of Supreme Court precedent to the facts of his case was

                                6

1  not only incorrect but objectively unreasonable. *Renico v. Lett*, 130

2  S. Ct. 1855, 1862 (2010).  Where no decision of the Supreme Court has

3  squarely decided an issue, a state court's adjudication of that issue

4  cannot result in a decision that is contrary to, or an unreasonable

5  application of, Supreme Court precedent. *See Harrington v. Richter*,

6  131 S. Ct. 770, 786 (2011).

7       Petitioner raised all three of his claims in a petition for

8  review in the California Supreme Court. (Lodgment No. 6.)  The

9  supreme court did not explain its reasons for denying them. (Lodgment

10 No. 7.)  The appellate court, however, did.  (Lodgment No. 5.)  This

11 Court presumes that the state supreme court rejected Petitioner's

12 claims for the same reasons the state appellate court did.  The Court,

13 therefore, looks to the appellate court's reasoning and will not

14 disturb it unless it concludes that "fairminded jurists" would all

15 agree that the decision was wrong. *Richter,* 131 S. Ct. at 786.

16                                  IV.

17                              DISCUSSION

18 A.   <u>Violation of California Penal Code Section 654</u>

19      Petitioner argues that his sentence for extortion and the

20 concurrent sentences that he received for attempted extortion violate

21 California Penal Code § 654, because he is effectively being punished

22 multiple times for a single, indivisible course of conduct.  As a

23 result, he argues, the concurrent sentences for attempted extortion

24 should be stayed.  (Petition for Writ of Habeas Corpus ("Petition") at

25 5.)  There is no merit to this argument.

26      Because a state trial court's sentencing decisions are purely

27 matters of state law, sentencing errors are not cognizable in federal

28 habeas corpus proceedings. *Estelle v. McGuire*, 502 U.S. 62, 67-68

                                     7

1  (1991) ("[I]t is not the province of a federal habeas court to re-
2  examine state-court determinations on state-law questions."); *Lewis v.*
3  *Jeffers*, 497 U.S. 764, 780 (1990) ("[F]ederal habeas corpus relief
4  does not lie for errors of state law."); *Watts v. Bonneville*, 879 F.2d
5  685, 687 (9th Cir. 1989) (holding claim based on California Penal Code
6  § 654 is not cognizable on federal habeas review).  Thus, even
7  assuming arguendo that the trial court misapplied California
8  sentencing law, Petitioner would not be entitled to relief unless he
9  could show that his sentence was fundamentally unfair.  *Christian v.*
10 *Rhode*, 41 F.3d 461, 469 (9th Cir. 1994).  There is no evidence to
11 support such an argument here.  Consequently, this claim does not
12 warrant federal habeas relief.[5]

13 B.   <u>Insufficiency of Evidence to Support Attempted Extortion</u>

14      Petitioner claims that there was insufficient evidence to support
15 his conviction for attempted extortion on March 26, 2007, because he
16 had not demanded money or threatened to extort money from Merida on
17 that date.  (Petition at 5.)  This claim, too, is without merit.

18      Federal habeas corpus relief is not available to a petitioner who
19 claims that the evidence was insufficient to support his conviction
20 unless he can show that, considering the trial record in a light most
21 favorable to the prosecution, "no rational trier of fact could have
22 found proof of guilt beyond a reasonable doubt."  *Jackson v. Virginia*,
23 443 U.S. 307, 324 (1979).  This Court presumes, even if it does not
24 affirmatively appear in the record, that the jury resolved any

25 _____

26      [5]  The state appellate court determined that "substantial
    evidence supported the trial court's implied finding that
27  [Petitioner]'s convictions for attempted extortion were separate and
    distinct offenses from each other as well as from the extortion[,]"
28  and, thus, his overall sentence was consistent with state law.
    (Lodgment No. 5 at 8, 10.)

conflicting inferences in favor of the prosecution. *McDaniel v. Brown*, 130 S. Ct. 665, 673 (2010) (quoting *Jackson*, 443 U.S. at 326). Furthermore, the Court reviews insufficiency claims "with an additional layer of deference," granting relief only when the state court's judgment was contrary to or an unreasonable application of *Jackson*. *Juan H. v. Allen*, 408 F.3d 1262, 1274-75 (9th Cir. 2005).

In California, extortion is defined as the "obtaining of property from another, with his consent . . . induced by a wrongful use of force or fear . . . ." Cal. Penal Code § 518. Attempted extortion is the "attempt[], by means of any threat . . . to extort money or other property from another." Cal. Penal Code § 524. The California Court of Appeal rejected Petitioner's insufficiency claim, noting:

> [Petitioner] contends the evidence is insufficient to support his conviction for attempted extortion on count 10 because there was "no testimony [he] actually made a demand for money on March 26, 2007, nor is there evidence that he made a threat to extort." According to [Petitioner], on March 26, 2007, he "simply asked [Merida] if a deal had been made and said he would return on Friday," which amounted to "'mere preparation for the commission of the crime'" on March 30, 2007. His argument is without merit.

> With respect to the crime of attempted extortion, "preparation" [h]as been defined as "devising or arranging the means or measures necessary for the commission of the offense." By contrast, "[t]he attempt is the direct movement toward the commission after the preparations are made." [Petitioner]'s actions progressed well beyond the stage of mere preparation during his March 26, 2007

9

encounter with Merida.  As he had on the two prior
occasions, [Petitioner] appeared armed with a handgun and in
the company of his confederates.  This time, however, Merida
testified [Petitioner] not only renewed his demand for
payment, but imposed a deadline for Merida to comply or
otherwise to suffer the previously threatened consequences.
Although on this date, [Petitioner] did not expressly renew
his threat to kill Merida or to destroy his business, the
threat was clearly implied under the circumstances.
[Petitioner]'s words and the conduct exceeded preparation
and constituted unequivocal action towards the commission of
the crime of extortion.  The verdict on count 10 is
supported by substantial evidence.

(Lodgment No. 5 at 6) (citations omitted).

     The Court agrees that there was sufficient evidence to support
Petitioner's conviction for attempted extortion on March 26, 2007.
Prior to that date, Petitioner had confronted Merida twice before and
threatened he would kill him or burn down his taco cart if Merida did
not pay for protection. (Reporter's Transcript ("RT") 136-49.)  Both
times, Petitioner brought other gang members with him and brandished a
gun.  Merida was obviously afraid.  (RT 137.)  The third time that
Petitioner approached Merida, March 26th, Petitioner was again armed
and again in the company of others.  (RT 140-41.)  Petitioner told
Merida that Merida "would have to start paying on [] Friday," and that
this was the "last time" that Petitioner was warning him.  (RT 140,
204.)  This evidence was more than enough to support Petitioner's
conviction for attempted extortion on March 26th.  This is
particularly so in the context of the first two encounters and the

1  fourth encounter, wherein, after Petitioner confronted Merida again,
2  Merida paid Petitioner the money.  For these reasons, Petitioner's
3  insufficiency claim is rejected.
4  C.  Sentence Constituting Cruel and Unusual Punishment
5      In Ground Three, Petitioner argues that his sentence of 17 years
6  to life "for a $25 theft with use of a weapon and for the benefit of a
7  gang" constitutes cruel and unusual punishment.  (Petition at 5-6,
8  attachment.)  This claim is without merit as well.
9      The Eighth Amendment, which forbids cruel and unusual punishment,
10 contains a narrow proportionality principle that applies to non-
11 capital sentences.  *Ewing v. California*, 538 U.S. 11, 20 (2003).  In
12 non-capital cases, the Eighth Amendment prohibits only extreme
13 sentences that are "grossly disproportionate" to the severity of the
14 crime.  *Harmelin v. Michigan*, 501 U.S. 957, 1001 (1991) (Kennedy, J.
15 concurring); *see also Lockyer v. Andrade*, 538 U.S. 63, 72 (2003) ("A
16 gross disproportionality principle is applicable to sentences for
17 terms of years.").  As a result, "[o]utside the context of capital
18 punishment, successful challenges to the proportionality of particular
19 sentences have been exceedingly rare."  *Rummel v. Estelle*, 445 U.S.
20 263, 272 (1980); *see also Andrade*, 538 U.S. at 77 ("The gross
21 disproportionality principle reserves a constitutional violation for
22 only the extraordinary case.").
23     In judging the appropriateness of a particular sentence, federal
24 courts must give state legislatures "broad discretion to fashion a
25 sentence that fits within the scope of the proportionality principle
26 . . . ."  *Andrade*, 538 U.S. at 76.  This includes taking into account
27 the state's interest in dealing in a harsher manner with those who by
28 repeated criminal acts have shown that they are simply incapable of

conforming to the norms of society as established by its criminal laws.  *See Rummel*, 445 U.S. at 276; *see also Solem v. Helm*, 463 U.S. 277, 296 (1983) ("[A] State is justified in punishing a recidivist more severely than it punishes a first offender.").  Current norms within society also determine whether the proportionality requirement has been met.  *Kennedy v. Louisiana*, 554 U.S. 407, 419 (2008).

The California Court of Appeal rejected Petitioner's claim that his sentence constituted cruel and unusual punishment, finding:

> The length of the sentence alone does not warrant relief.  (*See Harmelin v. Michigan* (1991) 501 U.S. 957 [mandatory sentence of life without possibility of parole for possessing 650 grams of cocaine did not violate Eighth Amendment].)  For example, California's Three Strikes law is not so disproportionate that it violates the prohibition against cruel or unusual punishment.  (*Ewing v. California* (2003) 538 U.S. 11, 25-31.)  "When the California legislature enacted the three strikes law, it made a judgment that protecting the public safety requires incapacitating criminals who have already been convicted of at least one serious or violent crime.  Nothing in the Eighth Amendment prohibits California from making that choice.  On the contrary, our cases establish that 'States have a valid interest in deterring and segregating habitual criminals.  [Citations.]" (*Id.* at p. 25.)

> The fact [Petitioner]'s sentence might effectively be for life without the possibility of parole based on his gang affiliation and activities in this case does not render it unconstitutional.  (See *People v. Byrd* (2001) 89 Cal. App.

1   4th 1373, 1382-1383 [sentence of 115 years plus 444 years to
2   life not unconstitutional] . . . .)
3       [Petitioner]'s sentence did not constitute cruel and
4   unusual punishment.
5   (Lodgment 5 at 10-11) (parallel citations omitted).
6       Again, the Court agrees.  Petitioner was convicted of extortion,
7   attempted extortion, and second degree robbery committed for the
8   benefit of a criminal street gang and while carrying a loaded firearm.
9   (CT 175-82, 209-10.)  His sentence was enhanced based on the fact that
10  he had previously been convicted of carrying a loaded gun.  (CT 206.)
11  With that backdrop, there is nothing remotely improper or unconsti-
12  tutional about this sentence.  In fact, the Supreme Court has affirmed
13  a sentence of 50 years to life for petty theft.  *See Andrade*, 538 U.S.
14  at 72-77 (holding consecutive 25-year-to-life sentences for
15  shoplifting $150 of video tapes from Kmart stores was not cruel and
16  unusual punishment); and see *Taylor v. Lewis,* 460 F.3d 1093, 1099-1102
17  (9th Cir. 2006) (holding sentence of 25-years-to-life for possession
18  of 0.036 grams of cocaine was not an unreasonable application of the
19  Supreme Court's proportionality standard).
20      Petitioner's argument that the amount of money in controversy,
21  $25, was so insignificant as to render his sentence extreme is
22  misplaced.  Petitioner's crime did not involve an attempted theft of
23  $25.  It involved him threatening the life of a vendor for refusing to
24  pay protection money to operate a business in territory claimed by
25  Petitioner's gang.  Petitioner was armed with a gun when he made his
26  threats and displayed the gun at times.  In addition, this was not the
27  first time Petitioner was out in public with a loaded gun.  He had
28  been convicted of carrying a loaded gun two years earlier.  Thus, his

13

sentence was not disproportionate to the severity of his criminal
conduct.  *See Taylor,* 460 F.3d at 1098 (holding permissible
consideration of harm caused or threatened to victim or society,
culpability of offender, and magnitude of crime in proportionality
review); *see also Ewing*, 538 U.S. at 26 ("Recidivism is a serious
public safety concern in California and throughout the Nation.");
*Solem,* 463 U.S. at 296 (finding higher penalties for recidivists
justified).[6]

## IV.  CONCLUSION

For all these reasons, the Petition is denied and the action is
dismissed with prejudice.  Further, because Petitioner has not made a
substantial showing of the denial of a constitutional right, he is not
entitled to a certificate of appealability.  *See* 28 U.S.C. section
2253(c)(2); *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003); *see also*
Fed. R. App. P. 22(b).

IT IS SO ORDERED.

DATED:  May 8, 2012.

PATRICK J. WALSH
UNITED STATES MAGISTRATE JUDGE

S:\PJW\Cases-State Habeas\GUEVARA, M 459\Memorandum Opinion and Order - FINAL.wpd

---

[6]  To the extent that Petitioner is claiming that his sentence
violates the California Constitution, this claim is not cognizable on
federal habeas review.  *See Estelle*, 502 U.S. at 67-68; *see also
Windham v. Merkle*, 163 F.3d 1092, 1106 (9th Cir. 1998) (declining to
review cruel and unusual punishment claim relying on state supreme
court's interpretation of its own precedent and the California
Constitution).

14