UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARDOQUEO GUEVARA,<br><br>            Petitioner,<br><br>     v.<br><br>MAURICE JUNIOUS, WARDEN,<br><br>            Respondent. | CASE NO. CV 11-459-PJW<br><br>MEMORANDUM OPINION AND ORDER DENYING PETITION WITH PREJUDICE |

## I.

## INTRODUCTION

Petitioner brings this habeas corpus petition pursuant to 28 U.S.C. § 2254, alleging that: 1) his sentence is unconstitutional because he received concurrent sentences for multiple convictions arising out of a single act; 2) there was insufficient evidence to support his conviction of attempted extortion in Count 10; and 3) his sentence of 17 years to life for attempting to extort $25 constitutes cruel and unusual punishment. For the following reasons, the Court finds that the state courts did not err in rejecting these claims.

II.

STATEMENT OF FACTS

The following statement of facts, including the footnotes, was taken verbatim from the California Court of Appeal's decision affirming Petitioner's convictions and sentence on direct appeal:

> This case arises from repeated encounters in or about December 2006 through March 2007 between [Petitioner], an admitted gang member, and the victim Rafael Merida, a street vendor.[1]
>
> [Petitioner] was charged by information with committing extortion (count 1), second degree robbery (count 2), and attempted extortion (counts 8, 9, 10) against Merida.[2] [Petitioner] was also charged with carrying a loaded, unregistered firearm (count 6). Gang enhancements were alleged as to counts 1, 2, 6, 8, 9 and 10, and firearm-use enhancements were alleged as to counts 1 and 2. The information further specifically alleged as to counts 1, 2 and 6 that [Petitioner] had previously served a separate prison term for a felony under Penal Code section 667.5, subdivision (b).
>
> According to the three counts at issue, [Petitioner] committed attempted extortion on the following occasions: On or between December 1, 2006 and January 31, 2007 (count

---

[1] Co-defendant Walter Giovanni Rivas accompanied [Petitioner] on some of those occasions. He is not a party to this appeal.

[2] Co-defendant Rivas [was] also charge[d] in counts 1, 2 and 6. The trial court dismissed counts 3, 4 and 5 on the prosecution's motion at the preliminary hearing.

1  8); on or between February 1, 2007 and February 29, 2007
2  (count 9); and on or about March 26, 2007 (count 10).
3      The pertinent evidence presented at trial established
4  Merida operated a taco stand outside a liquor store at a Van
5  Nuys intersection.  Early in 2007, [Petitioner], accompanied
6  by several other men, told Merida he was working in a
7  territory controlled by the Mara Salvatrucha (M.S.) gang,
8  and he would have to pay $25 in protection money or risk
9  being killed or having his taco stand burned down by
10 [Petitioner] and his companions.  Merida was frightened, but
11 he told [Petitioner] the taco stand did not belong to him.
12 Merida did not pay the protection money; [Petitioner] and
13 his companions left.  (Count 8.)
14     In February 2007, [Petitioner] returned with several
15 companions again and demanded the protection money, because
16 another taco vendor was paying it.  [Petitioner] also
17 reminded Merida he already knew what would befall him if he
18 refused to make payment.  This time, Merida said the taco
19 stand belonged to the liquor store.  [Petitioner] and his
20 companions left, again without collecting $25 from Merida.
21 (Count 9.)
22     On Monday, March 26, 2007, [Petitioner] and his
23 companions came back a third time.  [Petitioner] told Merida
24 he would have to start paying the protection money by Friday
25 [March 30, 2007] and "this was the last time they were
26 letting [Merida] know."
27     Merida testified [Petitioner] always brought a handgun
28 with him at every encounter.

 1        Right after his third encounter with [Petitioner],
 2   Merida contacted police, who gave Merida a microphone to
 3   wear for his anticipated meeting with [Petitioner] on
 4   Friday, March 30, 2007.  Officers agreed to conduct audio
 5   and video surveillance from a van parked near the
 6   intersection of Merida's taco stand.[3]  [Petitioner] arrived
 7   with his companions that evening, told Merida he was there
 8   for the protection money and asked if the two of them had a
 9   deal.  [Petitioner] said no one would bother Merida if he
10   made the $25 payment.  Merida saw a handgun in
11   [Petitioner]'s pocket.  At one point, [Petitioner] produced
12   the gun, yelled to a passing vehicle that it was in M.S.
13   territory and displayed what officers at the scene
14   recognized as an M.S. gang sign.  Merida made the $25
15   payment.  [Petitioner] left the scene, was followed by
16   officers, and arrested.
17        A police officer testified as a gang expert that
18   [Petitioner] committed the charged offenses for the benefit
19   of M.S., his criminal street gang.
20        The jury convicted [Petitioner] as charged and found
21   true the criminal street gain allegations and firearm-use
22   allegations.  In a bifurcated proceeding, the trial court
23   found true the prior prison term allegation.
24        At sentencing, the prosecutor sought a state prison
25   term of 17 years to life; defense counsel argued the

---

[3] The audio/video recording was played for the jury.  (RT 152-154.)

proposed sentence was cruel and unusual punishment for a $25 extortion, and urged the court to dismiss the gang enhancements (§ 186.22, subd. (g)) so [Petitioner] would be eligible to receive a determinate term sentence. The trial court replied that, had it not seen the videotape, it might have been inclined to strike the gang enhancement. "But after having seen the videotape of [Petitioner] and the way he was acting . . . , the court feels that this was really an egregious violation. It may have only been $25 on this occasion, but it was an ongoing offense. [¶] [Petitioner] was very persistent in collecting this and was clearly trying to intimidate everyone . . . with his gang affiliations." The court denied the defense motion to strike the gang enhancements in the interests of justice.

The trial court imposed an aggregate state prison sentence of 17 years to life, consisting of a life term with a minimum eligible parole date of seven years for the extortion charged in count 1, plus 10 years for the firearm enhancement under section 12022.53, subdivisions (b) and (e). The court also imposed concurrent terms of 54 months (the middle term of 18 months for attempted extortion, plus a consecutive three-year criminal-street-gang enhancement) on each of counts 8, 9 and 10.[4] Pursuant to section 654, the court imposed and stayed sentence on count 2 for second degree robbery, and on count 6 for carrying a loaded an[d]

---

[4] As discussed below, the middle term for attempted extortion is 24 months, rather than 18 months. (§ 524.)

5

unregistered firearm.  The court dismissed the one-year prior prison term enhancement in furtherance of justice. (Lodgment No. 5 at 2-4).

## III.

## STANDARD OF REVIEW

The standard of review in this case is set forth in 28 U.S.C. § 2254:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--
>
> (1)  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)  resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A state court decision is "contrary to" clearly established federal law if it applies a rule that contradicts Supreme Court case law or if it reaches a conclusion different from the Supreme Court's in a case that involves facts that are materially indistinguishable. *Premo v. Moore*, 131 S. Ct. 733, 743 (2011) (citing *Bell v. Cone*, 535 U.S. 685, 694 (2002)).  To establish that the state court unreasonably applied federal law, a petitioner must show that the state court's application of Supreme Court precedent to the facts of his case was

not only incorrect but objectively unreasonable. *Renico v. Lett*, 130 S. Ct. 1855, 1862 (2010). Where no decision of the Supreme Court has squarely decided an issue, a state court's adjudication of that issue cannot result in a decision that is contrary to, or an unreasonable application of, Supreme Court precedent. *See Harrington v. Richter*, 131 S. Ct. 770, 786 (2011).

Petitioner raised all three of his claims in a petition for review in the California Supreme Court. (Lodgment No. 6.) The supreme court did not explain its reasons for denying them. (Lodgment No. 7.) The appellate court, however, did. (Lodgment No. 5.) This Court presumes that the state supreme court rejected Petitioner's claims for the same reasons the state appellate court did. The Court, therefore, looks to the appellate court's reasoning and will not disturb it unless it concludes that "fairminded jurists" would all agree that the decision was wrong. *Richter,* 131 S. Ct. at 786.

IV.

DISCUSSION

A. <u>Violation of California Penal Code Section 654</u>

Petitioner argues that his sentence for extortion and the concurrent sentences that he received for attempted extortion violate California Penal Code § 654, because he is effectively being punished multiple times for a single, indivisible course of conduct. As a result, he argues, the concurrent sentences for attempted extortion should be stayed. (Petition for Writ of Habeas Corpus ("Petition") at 5.) There is no merit to this argument.

Because a state trial court's sentencing decisions are purely matters of state law, sentencing errors are not cognizable in federal habeas corpus proceedings. *Estelle v. McGuire*, 502 U.S. 62, 67-68

(1991) ("[I]t is not the province of a federal habeas court to re-examine state-court determinations on state-law questions."); *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990) ("[F]ederal habeas corpus relief does not lie for errors of state law."); *Watts v. Bonneville*, 879 F.2d 685, 687 (9th Cir. 1989) (holding claim based on California Penal Code § 654 is not cognizable on federal habeas review). Thus, even assuming arguendo that the trial court misapplied California sentencing law, Petitioner would not be entitled to relief unless he could show that his sentence was fundamentally unfair. *Christian v. Rhode*, 41 F.3d 461, 469 (9th Cir. 1994). There is no evidence to support such an argument here. Consequently, this claim does not warrant federal habeas relief.[5]

B.  <u>Insufficiency of Evidence to Support Attempted Extortion</u>

Petitioner claims that there was insufficient evidence to support his conviction for attempted extortion on March 26, 2007, because he had not demanded money or threatened to extort money from Merida on that date. (Petition at 5.) This claim, too, is without merit.

Federal habeas corpus relief is not available to a petitioner who claims that the evidence was insufficient to support his conviction unless he can show that, considering the trial record in a light most favorable to the prosecution, "no rational trier of fact could have found proof of guilt beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 324 (1979). This Court presumes, even if it does not affirmatively appear in the record, that the jury resolved any

---

[5] The state appellate court determined that "substantial evidence supported the trial court's implied finding that [Petitioner]'s convictions for attempted extortion were separate and distinct offenses from each other as well as from the extortion[,]" and, thus, his overall sentence was consistent with state law. (Lodgment No. 5 at 8, 10.)

8

conflicting inferences in favor of the prosecution. *McDaniel v. Brown*, 130 S. Ct. 665, 673 (2010) (quoting *Jackson*, 443 U.S. at 326). Furthermore, the Court reviews insufficiency claims "with an additional layer of deference," granting relief only when the state court's judgment was contrary to or an unreasonable application of *Jackson*. *Juan H. v. Allen*, 408 F.3d 1262, 1274-75 (9th Cir. 2005).

In California, extortion is defined as the "obtaining of property from another, with his consent . . . induced by a wrongful use of force or fear . . . ." Cal. Penal Code § 518. Attempted extortion is the "attempt[], by means of any threat . . . to extort money or other property from another." Cal. Penal Code § 524. The California Court of Appeal rejected Petitioner's insufficiency claim, noting:

> [Petitioner] contends the evidence is insufficient to support his conviction for attempted extortion on count 10 because there was "no testimony [he] actually made a demand for money on March 26, 2007, nor is there evidence that he made a threat to extort." According to [Petitioner], on March 26, 2007, he "simply asked [Merida] if a deal had been made and said he would return on Friday," which amounted to "'mere preparation for the commission of the crime'" on March 30, 2007. His argument is without merit.
>
> With respect to the crime of attempted extortion, "preparation" [h]as been defined as "devising or arranging the means or measures necessary for the commission of the offense." By contrast, "[t]he attempt is the direct movement toward the commission after the preparations are made." [Petitioner]'s actions progressed well beyond the stage of mere preparation during his March 26, 2007

9

> encounter with Merida. As he had on the two prior occasions, [Petitioner] appeared armed with a handgun and in the company of his confederates. This time, however, Merida testified [Petitioner] not only renewed his demand for payment, but imposed a deadline for Merida to comply or otherwise to suffer the previously threatened consequences. Although on this date, [Petitioner] did not expressly renew his threat to kill Merida or to destroy his business, the threat was clearly implied under the circumstances. [Petitioner]'s words and the conduct exceeded preparation and constituted unequivocal action towards the commission of the crime of extortion. The verdict on count 10 is supported by substantial evidence.

(Lodgment No. 5 at 6) (citations omitted).

The Court agrees that there was sufficient evidence to support Petitioner's conviction for attempted extortion on March 26, 2007. Prior to that date, Petitioner had confronted Merida twice before and threatened he would kill him or burn down his taco cart if Merida did not pay for protection. (Reporter's Transcript ("RT") 136-49.) Both times, Petitioner brought other gang members with him and brandished a gun. Merida was obviously afraid. (RT 137.) The third time that Petitioner approached Merida, March 26th, Petitioner was again armed and again in the company of others. (RT 140-41.) Petitioner told Merida that Merida "would have to start paying on [] Friday," and that this was the "last time" that Petitioner was warning him. (RT 140, 204.) This evidence was more than enough to support Petitioner's conviction for attempted extortion on March 26th. This is particularly so in the context of the first two encounters and the

fourth encounter, wherein, after Petitioner confronted Merida again, Merida paid Petitioner the money. For these reasons, Petitioner's insufficiency claim is rejected.

C.  <u>Sentence Constituting Cruel and Unusual Punishment</u>

In Ground Three, Petitioner argues that his sentence of 17 years to life "for a $25 theft with use of a weapon and for the benefit of a gang" constitutes cruel and unusual punishment. (Petition at 5-6, attachment.) This claim is without merit as well.

The Eighth Amendment, which forbids cruel and unusual punishment, contains a narrow proportionality principle that applies to non-capital sentences. *Ewing v. California*, 538 U.S. 11, 20 (2003). In non-capital cases, the Eighth Amendment prohibits only extreme sentences that are "grossly disproportionate" to the severity of the crime. *Harmelin v. Michigan*, 501 U.S. 957, 1001 (1991) (Kennedy, J. concurring); *see also Lockyer v. Andrade*, 538 U.S. 63, 72 (2003) ("A gross disproportionality principle is applicable to sentences for terms of years."). As a result, "[o]utside the context of capital punishment, successful challenges to the proportionality of particular sentences have been exceedingly rare." *Rummel v. Estelle*, 445 U.S. 263, 272 (1980); *see also Andrade*, 538 U.S. at 77 ("The gross disproportionality principle reserves a constitutional violation for only the extraordinary case.").

In judging the appropriateness of a particular sentence, federal courts must give state legislatures "broad discretion to fashion a sentence that fits within the scope of the proportionality principle . . . ." *Andrade*, 538 U.S. at 76. This includes taking into account the state's interest in dealing in a harsher manner with those who by repeated criminal acts have shown that they are simply incapable of

conforming to the norms of society as established by its criminal laws.  *See Rummel*, 445 U.S. at 276; *see also Solem v. Helm*, 463 U.S. 277, 296 (1983) ("[A] State is justified in punishing a recidivist more severely than it punishes a first offender.").  Current norms within society also determine whether the proportionality requirement has been met.  *Kennedy v. Louisiana*, 554 U.S. 407, 419 (2008).

The California Court of Appeal rejected Petitioner's claim that his sentence constituted cruel and unusual punishment, finding:

> The length of the sentence alone does not warrant relief.  (*See Harmelin v. Michigan* (1991) 501 U.S. 957 [mandatory sentence of life without possibility of parole for possessing 650 grams of cocaine did not violate Eighth Amendment].)  For example, California's Three Strikes law is not so disproportionate that it violates the prohibition against cruel or unusual punishment.  (*Ewing v. California* (2003) 538 U.S. 11, 25-31.)  "When the California legislature enacted the three strikes law, it made a judgment that protecting the public safety requires incapacitating criminals who have already been convicted of at least one serious or violent crime.  Nothing in the Eighth Amendment prohibits California from making that choice.  On the contrary, our cases establish that 'States have a valid interest in deterring and segregating habitual criminals.  [Citations.]" (*Id.* at p. 25.)
>
> The fact [Petitioner]'s sentence might effectively be for life without the possibility of parole based on his gang affiliation and activities in this case does not render it unconstitutional.  (See *People v. Byrd* (2001) 89 Cal. App.

12

      4th 1373, 1382-1383 [sentence of 115 years plus 444 years to life not unconstitutional] . . . .)

      [Petitioner]'s sentence did not constitute cruel and unusual punishment.

(Lodgment 5 at 10-11) (parallel citations omitted).

    Again, the Court agrees. Petitioner was convicted of extortion, attempted extortion, and second degree robbery committed for the benefit of a criminal street gang and while carrying a loaded firearm. (CT 175-82, 209-10.) His sentence was enhanced based on the fact that he had previously been convicted of carrying a loaded gun. (CT 206.) With that backdrop, there is nothing remotely improper or unconstitutional about this sentence. In fact, the Supreme Court has affirmed a sentence of 50 years to life for petty theft. *See Andrade*, 538 U.S. at 72-77 (holding consecutive 25-year-to-life sentences for shoplifting $150 of video tapes from Kmart stores was not cruel and unusual punishment); and see *Taylor v. Lewis,* 460 F.3d 1093, 1099-1102 (9th Cir. 2006) (holding sentence of 25-years-to-life for possession of 0.036 grams of cocaine was not an unreasonable application of the Supreme Court's proportionality standard).

    Petitioner's argument that the amount of money in controversy, $25, was so insignificant as to render his sentence extreme is misplaced. Petitioner's crime did not involve an attempted theft of $25. It involved him threatening the life of a vendor for refusing to pay protection money to operate a business in territory claimed by Petitioner's gang. Petitioner was armed with a gun when he made his threats and displayed the gun at times. In addition, this was not the first time Petitioner was out in public with a loaded gun. He had been convicted of carrying a loaded gun two years earlier. Thus, his

sentence was not disproportionate to the severity of his criminal conduct. *See Taylor,* 460 F.3d at 1098 (holding permissible consideration of harm caused or threatened to victim or society, culpability of offender, and magnitude of crime in proportionality review); *see also Ewing*, 538 U.S. at 26 ("Recidivism is a serious public safety concern in California and throughout the Nation."); *Solem,* 463 U.S. at 296 (finding higher penalties for recidivists justified).[6]

## IV. CONCLUSION

For all these reasons, the Petition is denied and the action is dismissed with prejudice. Further, because Petitioner has not made a substantial showing of the denial of a constitutional right, he is not entitled to a certificate of appealability. *See* 28 U.S.C. section 2253(c)(2); *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003); *see also* Fed. R. App. P. 22(b).

IT IS SO ORDERED.

DATED: May 8, 2012.

*/s/ Patrick J. Walsh*
PATRICK J. WALSH
UNITED STATES MAGISTRATE JUDGE

S:\PJW\Cases-State Habeas\GUEVARA, M 459\Memorandum Opinion and Order - FINAL.wpd

---

[6] To the extent that Petitioner is claiming that his sentence violates the California Constitution, this claim is not cognizable on federal habeas review. *See Estelle*, 502 U.S. at 67-68; *see also Windham v. Merkle*, 163 F.3d 1092, 1106 (9th Cir. 1998) (declining to review cruel and unusual punishment claim relying on state supreme court's interpretation of its own precedent and the California Constitution).